USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 12/21/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICHARD J. CAPAK,

           Plaintiff,

v.

TAUHEED EPPS *also known as* 2 CHAINZ and RORY DORALL SMITH,

           Defendants.

---

No. 18-CV-4325 (RA)

MEMORANDUM OPINION
& ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Richard J. Capak filed suit against Tauheed Epps and Rory Dorall Smith in the Supreme Court of the State of New York, subsequently removed to this Court, alleging state tort law claims for assault, battery, and negligence against both defendants and negligent hiring and retention against Epps. Plaintiff's claims arise out of an incident where Smith, while acting as a bodyguard for Epps, allegedly attacked and injured Capak as he attempted to videotape Epps. Smith was indicted on criminal charges in New York state court arising out of this incident. On May 14, 2018, Smith entered into a re-pleader plea agreement with the State under which he pleaded guilty to one charge of aggravated harassment in return for the opportunity, after two years of no new arrests and compliance with an order of protection preventing him from contacting Capak, to have his plea vacated, and his sentence reduced to probation.

Smith now moves this Court, "[i]n an abundance of caution," to stay discovery in his case pending resolution of his criminal proceedings. Notice of Mot. at 1. For the reasons that follow, Defendant's motion to stay is denied.

**BACKGROUND**

On October 27, 2017, Plaintiff Richard Capak, a professional videographer and *paparazzo*, attempted to videotape Tauheed Epps, a celebrity hip-hop artist professionally known as "2 CHAINZ," when Epps was arriving at 30 Rockefeller Plaza in New York City for a televised performance on a late-night show. *See* Notice of Removal (Dkt. 1), Ex. A, Complaint ¶¶ 6–7. Epps' bodyguard, Rory Dorall Smith, allegedly approached and attacked Capak as he videotaped Epps entering the building. *Id.* ¶¶ 8–9. Plaintiff contends that, as a result of this attack, he sustained serious injuries and "suffered pain, shock, [and] mental anguish." *Id.* ¶ 13. Later that evening, when Smith learned that Capak had filed a criminal complaint against him, Smith voluntarily surrendered himself to the police and was charged with two counts of assault in the third degree, N.Y. Penal Law §§ 120.00(1) & (2), one count of attempted assault in the third degree, *id.* § 110/120.00(1), and one count of harassment in the second degree, *id.* § 240.26(1), in the Criminal Court of the City of New York. Declaration of Douglas Doneson ("Doneson Dec.") (Dkt. 16) ¶ 5; Dkt. 16, Ex. A. On December 13, 2017, the State successfully sought an order of protection against Smith, preventing any contact or communication with Capak, including through third parties. *See id.*, Ex. E; Ex. F at 3:16–4:8.

On December 4, 2017, Capak filed the instant suit in the Supreme Court of New York State, alleging state tort law claims for assault, battery, and negligence against both defendants and negligent hiring and retention against Epps. *See* Dkt. 1, Ex. A; Dkt. 16 ¶ 7. On May 15, 2018, this case was removed to this Court on the basis of diversity jurisdiction. *See* Dkt. 1. On January 2, 2018, Smith filed an answer in this action, invoking his Fifth Amendment right against self-incrimination, denying all allegations against him, and interposing a number of affirmative defenses. *See* Dkt. 1, Ex. D.

2

On May 14, 2018, the Manhattan District Attorney's Office modified Smith's original charging instrument to add a class A misdemeanor charge of aggravated harassment, N.Y. Penal § 240.30(4), and Smith thereafter entered into a re-pleader agreement with the District Attorney. Dkt. 16 ¶¶ 10, 12–13, Ex. D. Such agreements allow a defendant to initially plead guilty to a greater offense in return for a later opportunity to have that plea vacated and re-pleaded to a lesser offense, provided that certain judicially-imposed conditions are met. *See, e.g., People v. Wilson*, 53 N.Y.S.3d 791, 793 (N.Y. App. Term 1st Dep't 2017). This agreement required several things of Smith. First, Smith was required to plead guilty to the newly-added charge of aggravated harassment and allocute to the elements of that crime. Dkt. 16, Ex. C at 2:17–25, 5:14–20. Smith did so before Judge Joanne Watters of the Criminal Court of the City of New York, where he admitted to "strik[ing] [] Capak about the face," causing injury, and doing so with the "intent to harass, annoy, threaten or alarm" Capak. *Id.*, Ex. C at 5:14–20. Second, Smith was required to refrain from being arrested for two years. *Id.*, Ex. C at 5:21–6:7.

Finally, the order of protection against Smith was made full and final, incorporating the terms of the existing temporary order, which required Defendant to have no contact with Capak while the case was pending, including any in-person contact, communication "by phone, email, text, card, instant message, letter, Twitter, Facebook, [or] any form of social media," or "sending messages to [Capak] through a third party." *Id.*, Ex. C at 4:6–9; Ex. F at 3:19–4:4. When the initial temporary order of protection was imposed, the prosecution informed the court of the pendency of this parallel civil action, and Judge Watters, after imposing the order of protection on Smith, noted that there were "certain rules about people being in the same courtroom" during a civil proceeding when there is an order of protection between them, and that Smith's attorney

3

would discuss these rules with him prior to his appearance in this proceeding. *Id.*, Ex. F at 2:22–23, 4:5–8.

If Smith complies with the aforementioned conditions, the agreement provides that on May 14, 2020, his plea will be vacated and he will be permitted to plead instead to a class B misdemeanor of attempted third-degree assault, which carries a sentence of one year of probation. *Id.*, Ex. C at 4:3–15. On July 27, 2018, after Smith's counsel suggested that a stay of civil proceedings may be necessary pending resolution of Smith's criminal proceeding, this Court temporarily stayed discovery in the case. *See* July 31, 2018 Order (Dkt. 12). On August 31, 2018, Smith moved to stay discovery at least until the completion of the two-year re-pleader period on May 14, 2020, if not until the completion of his probation. *See* Notice of Mot. to Stay Disc., Def.'s Br. at 8 (Dkts. 15, 17).

## STANDARD OF REVIEW

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)) (internal quotation marks omitted). Although the Constitution "does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings," this Court may nonetheless "decide in its discretion to stay civil proceedings…when the interests of justice seem…to require such action." *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (internal quotation marks omitted); *see also Louis Vuitton*, 676 F.3d at 97 ("[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why [a] plaintiff should be delayed in its efforts to diligently proceed to sustain its claim."). The party seeking a stay "bears the burden

4

of establishing its need." *Louis Vuitton*, 676 F.3d at 97 (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

In determining whether to stay a civil proceeding pending resolution of an ongoing criminal proceeding, courts in this Circuit consider such factors as (1) the extent to which the issues in the criminal case overlap with those presented in the civil case, (2) the status of the criminal case, (3) the private interests of and burden on the defendants, (4) the private interests of the plaintiffs, (5) the interests of the courts, and (6) the public interest. *See id.* at 99. Consideration of these factors, however, "can do no more than act as a rough guide for the district court as it exercises its discretion," which still "demands a particularized inquiry into the circumstances of, and the competing interests in, the case." *Id.* (quoting *Banks v. Yokemick*, 144 F. Supp. 2d 272, 275 (S.D.N.Y. 2001).

## DISCUSSION

Smith argues that at least three factors favor granting a stay pending his sentencing. First, Smith contends that there is a substantial overlap between his civil and criminal actions; second, that his criminal action is still "open and non-final"; and third, that a denial of the stay would burden both his Fifth Amendment right against self-incrimination and his ability to effectively engage in civil discovery and to defend himself.

The Court considers each argument in turn.

### 1. Overlap of the Cases

As an initial matter, Smith argues that there is an overlap between his civil and criminal cases, thus supporting the grant of a stay. Parallel cases substantially overlap when they "arise from the same facts and involve nearly identical issues." *Sec. & Exch. Comm'n v. Blaszczak*, No. 17-CV-3919 (AJN), 2018 WL 301091, at *2 (S.D.N.Y. Jan. 3, 2018). Here, both cases arise from the same facts, namely that Smith allegedly struck Capak in the face while acting as a bodyguard

5

for Epps. Moreover, common issues are at the core of both cases. In his plea allocution, Smith admitted to intentionally striking Capak in the face and that Capak suffered injury as a result. *See* N.Y. Penal § 240.30(4) (elements of aggravated harassment are intent to harass, physical contact, and injury). Capak's civil claim of common law battery against Smith would similarly require establishing that Smith struck Capak intentionally, which resulted in injury to Capak. *James Biggs v. City of New York*, No. 08 Civ. 8123 (PGG), 2010 WL 4628360, at *7 (S.D.N.Y. Nov. 16, 2010) (elements of battery are intentional bodily contact that is harmful or offensive). Thus, because there is a substantial overlap between the civil and criminal proceedings, this factor weighs in favor of a stay.

### 2. Status of the Cases

The second factor that Smith argues supports granting a stay, the status of the criminal proceeding, does not, however, weigh in Smith's favor. Smith contends that his criminal proceeding is still "open and non-final" because his "re-pleader plea agreement has not been reduced to a final judgment on conviction." *See* Dkt. 17 at 3. But a court's decision to grant a stay based on the status of one's criminal proceeding should generally be guided by "whether a prosecution is likely and imminent as opposed to a remote or purely hypothetical possibility." *Louis Vuitton*, 676 F.3d at 100, n.14. In this case, the only reason that the defendant has not been sentenced is because of the two-year waiting period incorporated into the re-pleader agreement. *See* Dkt. 16, Ex. C at 5:21–6:7. Consequently, while Smith's criminal proceedings may be, as he suggests, "ongoing," he has already been prosecuted for the events at issue and pleaded guilty to a charge brought against him. This factor thus sides against granting his motion.

### 3. Prejudice to Defendant from Withholding the Stay

Smith's third and final reason he argues justifies a stay, that proceeding with this civil action will prejudice him in his criminal proceeding, is also unavailing. First, Smith contends that

6

if his civil case is not stayed, he will be forced to choose between invoking his Fifth Amendment right against self-incrimination in the civil proceeding, and therefore risk an adverse inference, or foregoing this privilege and jeopardizing his plea agreement. Dkt. 17 at 2. It is true that "[a] stay can protect a civil defendant from facing the difficult choice between being prejudiced in the civil litigation, if the defendant asserts his or her Fifth Amendment privilege, or from being prejudiced in the criminal litigation if he or she waives that privilege in the civil litigation." *Louis Vuitton*, 676 F.3d at 97. Although "courts have generally been concerned about the extent to which continuing the civil proceeding would unduly burden a defendant's exercise of his rights under the Fifth Amendment," a court's decision to grant or withhold a stay must be "based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Id.* at 97, 99. Ultimately, the Second Circuit has made clear that a "defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Id.* at 98 (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995)) (internal quotations omitted).

Here, however, it appears that the sole manner in which Smith's Fifth Amendment rights may be burdened is through the loss of his plea agreement. New York courts may vacate plea agreements upon the discovery of new evidence, fraud, clerical error, or with a defendant's consent. *See People v. Searcy*, 770 N.Y.S.2d 493, 494 (N.Y. App. Div. 4th Dep't 2003). Presumably, Smith fears that, if he does not invoke his Fifth Amendment rights, he will be forced to admit something in his civil case that will be construed as indicating that he lied to obtain his plea agreement. *See* Dkt. 17 at 7 (remarking that "[t]he [state] court has the power to vacate a plea or conviction that was obtained as a result of fraud or misrepresentation"). But Smith leaves the Court to speculate how this could occur. Where a defendant is seeking the stay and therefore

"bears the burden of establishing its need," *Louis Vuitton*, 676 F.3d at 97, the Court will not base a stay solely on "speculative and uncertain risks to [D]efendant's interests" where no showing of possible prejudice has been made, *Maldanado v. City of New York*, No. 17-CV-6618 (AJN), 2018 WL 2561026, at *2 (S.D.N.Y. June 4, 2018); *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 578 (S.D.N.Y. 2001) ("[S]ince depositions have not yet taken place, there is no way of measuring with any precision what questions defendants may refuse to answer, or what damage may be done to their position in the civil case by any assertions of privilege they might choose to make.").

Somewhat more concretely, Smith contends that allowing civil discovery to continue could uncover new evidence against him that could cause the state court to either vacate Smith's plea or depart from his prospective sentence under the re-pleader agreement. *See* Dkt. 17 at 7 (stating that "Smith's plea agreement may be terminated upon the finding of new evidence related to People's original case in chief, which may potentially be uncovered by discovery in the instant civil case"). But Smith has not even hinted at what new evidence unearthed during civil discovery he fears may provide grounds for terminating his plea agreement. Indeed, during his plea allocution, Smith already admitted that he struck Capak in the face causing injury. As before, this Court will not grant a stay based on mere speculation.

Finally, Smith argues that proceeding with his civil case may jeopardize his plea agreement by forcing him to come into contact with Capak, which will violate his protective order. This argument has little merit. Smith is represented by counsel and is not required to personally attend depositions or become involved in any other discovery procedures that would put him in physical contact with Capak, who has counsel of his own. Nor will Smith's appearance before this Court meaningfully jeopardize his plea agreement. It is entirely within Smith's power to abide by the

"no-contact" provision of the order of protection while appearing before this Court.* Indeed, as Smith points out in his own brief, *See* Dkt. 17 at 4, a New York state court may only find a defendant in violation of the order of protection if he has been arrested, charged with contempt, and provided with a hearing to determine "the existence of a legitimate basis for the arrest on that charge." *See People v. Outley*, 80 N.Y.2d 702, 713 (N.Y. 1993). In the unlikely event that Smith's presence in these proceedings somehow results in his arrest, he will be able to provide a "plausible, exculpatory explanation of [his] post[-]plea arrest," namely that his appearance before this Court was necessary in order to defend himself in the instant suit. *Id.* (citing *People v. Banks*, 557 N.Y.S.2d 529, 530 (N.Y. App. Div. 1990)).

Consequently, Smith has not shown that he will be prejudiced if this Court denies his motion for a stay.

### 4. Prejudice to Plaintiff in Granting the Stay

Finally, the Court must also consider the "private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay." *Trs. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995). In this case, Plaintiff has a strong interest in proceeding with civil discovery. It has been over a year since Capak was allegedly assaulted by Smith, and this civil case has already been stayed since July of this year. *See* Dkt. 12. Imposing an additional stay until May 14, 2020—a period of seventeen months from now—could lead to faded memories and/or prevent Plaintiff from recovering on his tort claim for several years after the alleged injury. *See Sterling Nat'l*, 175

---

* To the extent that Smith alleges that Capak has a "history of inducing contact with [Smith] at [Defendant's] criminal court proceedings after the Order of Protection was issued," *see* Dkt. 17 at 6, this purported risk does not justify a stay. First, contact initiated by the beneficiary of an order of protection does not ordinarily amount to a violation of such an order. *See, e.g., People v. Dillon*, 863 N.Y.S.2d 265, 266 (N.Y. App. Div. 3d Dep't 2008); *Cavanaugh v. Madden*, 751 N.Y.S.2d 225, 227 (N.Y. App. Div. 2002). Second, should it prove necessary, this Court is prepared to take preventive measures to ensure that Smith does not come into contact with Capak when entering or leaving the courtroom.

F. Supp. 2d at 578-79 (denying six-month stay of civil proceeding pending resolution of parallel criminal proceeding where court had "no way of knowing" whether criminal investigation would result in new indictments and prejudice to plaintiff in delay was "pronounced" because litigation had been pending for eight months and defendants were asking for another six months to stay depositions); *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980) ("That defendant's conduct also resulted in a criminal charge against him should not be availed of by him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim.").

Accordingly, because the private interest of Plaintiff in proceeding expeditiously weighs strongly in favor of proceeding with this litigation and Smith has not shown that he would be prejudiced if his civil case proceeds, the Court denies his request for a stay.

## CONCLUSION

For the foregoing reasons, Smith's motion for a stay pending his sentencing is denied. Defendant's request for oral argument on the motion is denied as moot. The Clerk of the Court is respectfully requested to terminate the docket entries at 14 and 15.

It is further ordered that, by January 4, 2019, the parties shall jointly submit a revised case management plan and scheduling order in this case.

SO ORDERED.

Dated: December 21, 2018
New York, New York

Ronnie Abrams
United States District Judge